In re ASTROCADE, INC., Debtor.

Craig M. STEWART, Trustee, Plaintiff,

v.

A.L. STRASBURGER, et al.,
Defendants.

Bankruptcy No. 2–82–04677.
Adv. No. 2–83–0451.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Dec. 4, 1987.

---

Craig M. Stewart, Trustee, Carlile, Patchen, Murphey & Allison, Columbus, Ohio.

Robert J. Sidman, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for A.L. Strasburger, and L. Strasburger and Sons d/b/a Associated Distributing Co.

James C. Carpenter, Carlile, Patchen, Murphey & Allison, Columbus, Ohio, for trustee.

**DECISION AND ORDER DENYING MOTIONS TO DISMISS AND TRANSFER; JURY DEMAND TRANSMITTED TO DISTRICT COURT FOR REVIEW OF REFERENCE**

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter is before the Court upon the motion of defendants, A.L. Strasburger, L. Strasburger & Sons, d/b/a Associated Distributing Company, and Leroy Strasburger to dismiss the complaint for lack of personal jurisdiction or alternatively, to transfer this case to another district; motion of defendants for determination of core/non-core status and dismissal of case for lack of subject matter jurisdiction; jury demand by the defendants; plaintiff's memorandum contra defendants' motions to dismiss for lack of personal and subject matter jurisdiction; and reply memorandum of defendants in support of their motions to dismiss or to transfer the case and to determine core/non-core status.

The plaintiff is the Court-appointed trustee for Astrocade, Inc. (Astrocade), a debtor in a Chapter 11 case pending in this Court. In that capacity, plaintiff filed this adversary proceeding in which he asserts that Astrocade provided goods and services to the defendants. The plaintiff is seeking to recover the amount of defendant's account with the debtor or, in the alternative, the value of goods and services provided defendants by the debtor. Defendants are all residents of South Carolina.

Defendants filed a motion to dismiss the complaint of the trustee claiming that this Court lacked jurisdiction to hear the subject matter of this adversary proceeding. This Court overruled defendants' motion to dismiss on the basis of the emergency rule adopted to govern the operation of the bankruptcy court system. Defendants then filed a motion for leave to appeal that Order. The United States District Court for the Southern District of Ohio denied the defendants' motion for leave to appeal and remanded the proceeding to this Court. The defendants then filed their answer and defenses to the complaint, along with a demand for a jury trial. The defendants also filed the motions for dismissal and for determination of core/non-core status.

The issues before this Court are:

1.) Does the Court possess personal jurisdiction over the defendants?

2.) Is a change in venue appropriate in this case?

3.) Does the Court possess subject matter jurisdiction over the trustee's claims?

4.) Is this matter a core or non-core matter?

5.) Is there a right to a jury trial as demanded by the defendants?

*1. Personal jurisdiction*

The defendants' position is that personal jurisdiction over non-resident defendants must be determined by the law of the forum state. Defendants maintain that Ohio's "long-arm" statute, Ohio Revised

Code § 2307.382 controls, as well as the requirements of due process as established in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945).

The scope of *in personam* jurisiction over nondebtor defendants in bankruptcy proceedings and the question of whether nationwide service of process is authorized has been the subject of much litigation. As under the 1978 Act, see *In re Trim-Lean Meat Products, Inc.*, 11 B.R. 1010 (Bankr.D.Del.1981), it has been held under the 1984 Act that the district court, and its bankruptcy court units, have jurisdiction that extends nationwide over non-resident defendants in any "related to" proceeding despite a lack of "minimum contacts" with the forum in which the district or bankruptcy court is located. *In re WWG Industries, Inc.*, 44 B.R. 287 (D.C.N.D.Ga., 1984). See also *In re Coby Glass Products Co.*, 22 B.R. 961 (Bankr.D.R.I.1982), and *Schack Glass Industries Co., Inc.*, 20 B.R. 967 (Bankr.S.D.N.Y.1982).

## 2. *Venue*

■ The defendants alternatively seek to have this case tried in a South Carolina Court pursuant to 28 U.S.C. §§ 1412 and 1404(a). The defendants all reside in South Carolina and have no contact with Ohio. The Plaintiff states that the defendants have the burden of proving the necessity for a change of venue, that is, to prove any inconvenience or that the interests of justice would be better served by a transfer to a South Carolina forum.

The Court in this instance views a change of venue as merely shifting the inconvenience from one party to the other. *Phillips v. S. Gumpert Co., Inc.*, 627 F.Supp. 725 (W.D.N.C.1986). Noting that this case has been pending since 1983 and finding that this case was properly filed as to venue under 28 U.S.C. § 1410, the Court believes the interest of justice would not be better served by a transfer of this case to a South Carolina forum. *Shapiro v. Merrill Lynch & Co.*, 634 F.Supp. 587 (S.D.Ohio 1986); *Nemmers v. Truesdale*, 612 F.Supp. 245 (D.C.Ohio 1985).

## 3. *Subject-matter jurisdiction*

Defendants raise the subject matter jurisdiction issue once again in their motion for determination of core/non-core status. While the Court will expound on core/non-core status later in this Order, the issue of subject matter jurisdiction has been ruled on by this Court previously, and defendant's motion for leave to appeal was denied by the District Court. The Court has subject matter jurisdiction in this case.

## 4. *Core/Non-core Status*

The defendants moved the Court to determine whether plaintiff's complaint seeking to recover the amount of an alleged account from the defendants constitutes a core or non-core proceeding under 28 U.S.C. § 157. The defendants cite numerous cases where this type of action has been considered a non-core proceeding. Plaintiff argues that this is a core proceeding, and that a determination of whether a proceeding is a core proceeding should not be made solely on whether or not its resolution may be affected by state law.

Resolution of whether the issues before the Court are core or related proceedings requires an analysis of the changes effected by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (BAFJA). Under 28 U.S.C. § 1334, district courts were granted jurisdiction over all cases under title 11, and all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Pursuant to 28 U.S.C. § 157(a), the district courts:

> ... may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

The United States District Court for the Southern District of Ohio entered an Order on July 31, 1984 which provides for the automatic referral to the Bankruptcy Court of those cases and proceedings pursuant to Section 157(a) of the Act.

The characterization of a related matter as core or non-core determines whether the bankruptcy court is then empowered to enter final orders and judgments pursuant to the reference.

If a matter is determined to be a core proceeding under § 157(b)(2), the bankruptcy court may hear it and render a final determination, subject to appeal. 28 U.S.C. § 157(b)(1). Otherwise, the bankruptcy court may hear a non-core proceeding and submit proposed findings of fact and conclusions of law to the district court, 28 U.S.C. § 157(c)(1); the district court then enters a final order or judgment after it reviews *de novo* those findings to which any party has timely and specifically objected. By consent, the parties may empower the bankruptcy court to enter a final order or judgment in a non-core proceeding, which order or judgment would then be subject to appellate review by the district court, in the same manner as if it had been entered in a core proceeding. 28 U.S.C. § 157(c).

This new jurisdictional scheme, defining matters according to core/non-core status, was initiated by Congress following the Supreme Court's invalidation of 28 U.S.C. § 1471 in the case of *Northern Pipeline Construction Co. v. Marathon Pipeline Company*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Supreme Court struck down § 241(a) of the Bankruptcy Reform Act of 1978 which had expanded the jurisdiction of bankruptcy courts without granting Article III status to bankruptcy judges.

BAFJA lists a non-inclusive series of examples of what is to be considered within the meaning of a core proceeding. Pursuant to 28 U.S.C. § 157(b)(2) core proceedings include but are not limited to:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

This is only a non-inclusive list and no definition of the term "core proceeding" is given, leaving that to be determined by the courts. Non-core proceedings are also undefined, but generally are considered to be:

... adversary cases or controversies which are triable only by Article III courts or state courts ... They are traditional state common law actions, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law ...

*Willis v. Ryan (In re Bucyrus—Grain Co., Inc.)*, 56 B.R. 204, 13 B.C.D. 1228, 1229 (Bankr.D.Kan.1986), cited in *In re R.I. Lithograph Corp.*, 60 B.R. 199, 203 (Bankr.D. R.I.1986).

In the case at bar, the trustee/plaintiff is attempting to collect on an accounts receivable claim. Both parties have submitted authorities on how courts have chosen to classify this type of action.

Plaintiff cites as controlling the cases of *Franklin Computer Corp. v. Harry Strauss & Sons, Inc. (In re Franklin Computer Corp.)*, 50 B.R. 620 (Bankr.E.D. Pa.1985) and *Baldwin United Corp. v. Thompson (In re Baldwin United Corp.)* 48 B.R. 49 (Bankr.S.D.Ohio 1985). *Franklin Computer* was a case to collect accounts receivable, and the Court held that disputes on accounts receivable are core matters within the meaning of § 157(b). The court premised this ruling on the conclusion that:

> It is a rare case when we are presented with novel, unsettled issues of state law which could possibly infringe on the comity between this federal court and the perogatives of a state court having concurrent jurisdiction. Even less frequently are we faced with disputes which would call into play the protections of life tenure and undiminishable compensation which, in part, distinguishes bankruptcy judges from Article III judges, such distinctions being the ostensible bases of the decision in *Marathon. Id.* at 626.

The court in *Frankin Computer* cited in support of its decision the case of *Baldwin United Corp. v. Thompson*, wherein Bankruptcy Judge Newsome held that a turnover complaint seeking to collect on four installment loans which were matured, payable on demand, or payable on order, constituted a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(E) and (O). *See also, In re Windsor Communications Group*, 67 B.R. 692 (Bankr.E.D.Pa.1986), wherein the Court held that an account receivable action brought by the debtor constitutes a core proceeding.

The Court will now consider cases cited by the defendant wherein suits to recover accounts receivable were not considered core proceedings. The Court finds most convincing the reasoning of the court in *Atlas Automation, Inc. v. Jensen, Inc., (In re Atlas Automation, Inc.)*, 42 B.R. 246 (Bankr.E.D.Mich.1984). This case was an action by the debtor against a company, which was otherwise a stranger to those proceedings, for a money judgment on an alleged account receivable. The defendant counterclaimed and demanded a jury trial. The defendant also moved for dismissal or abstention based upon the *Marathon* decision. The court stated,

> The complaint and counterclaim are based on contract theories. Unless the Court were to read "orders to turn over property of the estate" or "other proceedings affecting the liquidation of the assets of the estate ..." to include collection of accounts receivable or actions for breach of contract, this case is not a "core proceeding" as defined by 28 U.S. C. § 157(b)(2). Although money due to a Chapter 11 debtor can certainly be described as "property of the estate" for which the plaintiff is requesting a "turn over" order, and although this is a "proceeding affecting the liquidation of the assets of the estate" in that it is indeed an action to liquidate what at least the debtor perceives to be an asset, to wit: an account receivable, the Court cannot ignore the legislative intent behind the recent enaction of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353. In light of the fact that this statute was enacted in response to the Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, and that case involved an action similar in legal nature to the case at hand, i.e., a breach of contract action, it is doubtful that Congress intended this type of case to be tried by a bankruptcy court. Thus, although the perimeters of the definition of "turn over property of the estate" and "proceeding affecting the liquidation of the assets of the estate" are yet to be explored, they do not include actions of this type.

Therefore, the Court, on its own motion, pursuant to 28 U.S.C. § 157(b)(3), determines that this case is a "proceeding that is otherwise related to a case under title 11." *Id.* at 247.

In further support of the defendant's position is *Taxel v. Commercebank (In re World Financial Services Center, Inc.)*, 64 B.R. 980 (Bankr.S.D.Calif.1986). The court expressly rejected the *Baldwin–United* approach, holding that the mere characterization of a lawsuit as a proceeding to compel turnover is not dispositive and that a court is required to look behind the characterization to determine that a turnover proceeding is actually at issue.

In the case of *In re Shaford Companies, Inc.*, 52 B.R. 832, 13 C.B.C.2d 564 (Bankr. D.N.H.1985), Judge Yacos rejected an attempt to characterize the recovery of money damages as a turnover within the meaning of 28 U.S.C. § 157(b)(2)(E):

> The [turnover] argument however is specious in that such a construction would in effect remove *any* distinction between core and non-core proceedings for purposes of bankruptcy court jurisdiction. Any cause of action demanding money damages or payment of sums due under a contract could be construed to be turnover in that sense. *Id.* at 567.

On whether the "catchall" provisions of § 157(b)(2)(A) and (O) apply, he stated:

> ... subsections 157(b)(2)(A) and (O) must be construed as not including an adversary lawsuit brought by a debtor-in-possession based upon a state law contractual cause of action against a proceedings. This conclusion follows from what I take to be the precise and actual holding of the United States Supreme Court in its *Marathon* decision in 1982. *Id.* at 570.

The case of *Acolyte Elec. Corp. v. City of New York*, 69 B.R. 155 (Bankr.E.D.N.Y. 1986) considered the interplay between 28 U.S.C. § 157(b)(2)(E) and 11 U.S.C. § 542 (turnover) and concluded:

> A turnover proceeding can only be considered a core proceeding under § 542(b) when its purpose is the collection rather than the creation, recognition or liquidation of a matured date [sic] ... In

this adversary proceeding there is a legitimate dispute as to whether *Acolyte* is entitled to recover the funds claimed due under the contract. *Id.* at 172.

 Based on the foregoing, and adopting the view that a restrictive and narrow reading of 28 U.S.C. § 157(b) is constitutionally required in light of the *Marathon* decision, this Court finds that the plaintiff's cause of action to collect on accounts receivable is not a core proceeding.

In finding that this Court lacks jurisdiction over the plaintiff/trustee's complaint as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (O), the question then presented to this Court is whether this matter is a non-core, "otherwise related proceeding".

 In order for a bankruptcy court to have jurisdiction over a proceeding brought in its forum, that proceeding must, at the outer limits, be related to a case under Title 11. 28 U.S.C. § 157(c)(1) states that "a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."

While the term "related proceeding" is not defined in 28 U.S.C. § 157 or § 1334, a number of cases have attempted to define the terms of "related to" or "related proceeding". See, e.g. *In re Cemetery Development Corp.*, 59 B.R. 115 (Bankr.M.D.La. 1986); *In re John Peterson Motors, Inc.*, 56 B.R. 588 (Bankr.D.Minn.1986); *In re Bowling Green Truss, Inc.*, 53 B.R. 391 (Bankr.S.D.Ohio 1985); *Baldwin United Corp. v. Thompson, supra.*

The court in the *Bowling Green Truss* case articulated what constitutes a "related proceeding" in a bankruptcy when it observed:

> A judgment must be made on a case-by-case basis after careful consideration of the facts surrounding both the specific controversy at hand and those generally attending the entire bankruptcy. If an action has a direct and substantive impact on the bankruptcy estate or its administration, then it is related to the bankruptcy case and jurisdiction exists.

But if a controversy has only a vague or incidental connection with a pending case, and any impact its resolution may have on the bankruptcy estate is speculative, indirect or incidental, then the matter is unrelated to the bankruptcy case and we would not hear it. *Id.* at 394.

This Court finds the definition as set forth in the Third Circuit case of *Pacor, Inc. v. Higgins (In re Pacor )*, 743 F.2d 984 (3rd Cir.1984), to be very descriptive. The Third Circuit stated:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. E.g., *In re Hall,* 30 B.R. [799] at 802 [ (Bankr.M.D.TN 1983) ]; *In re General Oil Distributors, Inc.,* 21 B.R. 888, 892 n. 13 (Bankr.E.D.N.Y.1982); *In re U.S. Air Duct Corp.,* 8 B.R. 848, 851 (Bankr. N.D.N.Y.1981); 1 Collier on Bankruptcy para. 3.01 at 3–49. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. *Id.* at 994.

For cases holding that state law contract claims that arguably fall within the catch-all provisions are "non-core" "related proceedings", under § 157(c), see *K–Rom Construction Corp. v. Behling (In re K–Rom Construction Corp.),* 46 B.R. 745, 749 (S.D.N.Y.1985); *Cameron v. Anderson (In re American Energy, Inc.),* 50 B.R. 175, 178–79 (Bankr.D.N.D.1985); *Morse Electric Co., Inc. v. Logicon, Inc. (In re Morse Electric Co., Inc.),* 47 B.R. 234, 237 (Bankr.N.D.Ind.1985).

In the case at bar, the trustee is asserting that the defendant owes the bankruptcy estate funds based on collection of accounts receivable of the debtor. A recovery of any assets pursuant to the trustee's lawsuit will result in greater distribution to the creditors of this estate. Therefore, based on the above, this Court finds the case before it to be a "related proceeding" over which it possesses subject matter jurisdiction.

### 5. *Jury Trial*

The narrow issue remaining is the propriety of our conducting a jury trial in Bankruptcy Court in a non-core related proceeding at the request of the defendant. The issue of if or when a party is entitled to a jury trial in a bankruptcy action has been the subject of much dispute. Because of this confusion, an analysis of the right to a jury trial is appropriate.

Under the Bankruptcy Act of 1898, the right to a jury trial in a bankruptcy matter was determined by whether the court had summary or plenary jurisdiction over the issue. Parties were entitled to a jury trial if the action invoked the court's plenary jurisdiction, but not entitled if it invoked the exercise of the court's summary powers.

In *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the United States Supreme Court held in a voidable preference action that:

> As bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive control, ... and as the proceedings of bankruptcy courts are inherently proceedings in equity, ... there is no Seventh Amendment right to a jury trial for determination of objections to claims ... [Citations omitted.] *Id.* at 336–37, 86 S.Ct. at 476–77.

The Supreme Court in *Katchen* thus recognized that the equitable nature of a bankruptcy proceeding vested with the bankruptcy court exclusive control over those summary issues arising from the bankruptcy such as objections to claims. The Court observed:

> But although petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, ... when the same issue arises as part of the process

of allowance and disallowance of claims, it is triable in equity. *Id.* at 336, 86 S.Ct. at 476.

The summary/plenary distinction continued to be fertile ground for dispute. Congress then enacted the Bankruptcy Reform Act of 1978. The Act included a broad jurisdictional grant to the bankruptcy court (28 U.S.C. § 1471). It abolished the distinction between summary and plenary jurisdiction, and allowed bankruptcy courts to exercise jurisdiction over all actions, regardless of whether they had previously been denominated as summary or plenary proceedings. Congress enacted 28 U.S.C. § 1480 to preserve any right to a jury which might have existed prior to enactment of the Bankruptcy Reform Act. H.Rep. No. 595, 95th Cong. 1st Sess. 448 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Section 1480 read as follows:

> (a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.
>
> (b) The bankruptcy court may order the issues arising under section 303 of title 11 to be tried without a jury.

Thus, even though an issue was being tried in the bankruptcy court, normally considered a court of equity, a right to a jury trial would still exist in some cases. See, e.g. *In re Frank Meador Buick, Inc.*, 8 B.R. 450 (Bankr.W.D.Va.1981).

In interpreting Section 1480, courts developed a two-part test to determine if a jury right existed. *In re Mozer*, 10 B.R. 1002 (Bankr.D.Colo.1981). The first part was to decide if the matter would have been classified as a summary or plenary proceedings under the former Act. Summary proceedings, as previously stated, were not entitled to a trial by jury. Several courts have modified the summary/plenary distinction of *Katchen* by relying on the nature of the cause of action as a basis for entitlement to a jury trial, and there-

fore, analyze whether the action lies in equity or is brought at law. *Zimmerman v. Cavanaugh, (Matter of Kenval Marketing Corp.)*, 65 B.R. 548 (E.D.Pa.1986); *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824 (S.D.N.Y.1985).

If the matter would have been a plenary proceeding, the second part of the test required that the right to a jury be determined by deciding whether any court in which the plenary proceeding could have been brought would have recognized a right to a jury. *In re Mozer, supra; In re Portage Associates, Inc.*, 16 B.R. 445 (Bankr.N.D.Ohio 1982). The courts would then consider whether the right to a jury was allowed by the Seventh Amendment to the U.S. Constitution or a statute. See *Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830 (11th Cir.1982).

The Seventh Amendment preserves the right to a jury trial in suits at common law. The Supreme Court has distinguished between legal claims, such as judgment for money damages, and claims which seek the exercise of a court's equitable jurisdiction. See, e.g., *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). If the issue would have been tried in a court of equity, there is no right to a jury. However, a right to a jury trial would exist if the issue would have been tried in a court of law. In order to determine whether the proceeding is brought at law or lies in equity, the court must examine both the historical treatment of the issue and the nature of the remedies sought, *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), resolving all ambiguities in favor of providing a jury trial. *Ross*, 396 U.S. at 542–43, 90 S.Ct. at 740–41.

The United States Supreme Court struck down the broad jurisdictional grant contained in 28 U.S.C. § 1471(c) in the decision of *Marathon, supra.* Each circuit then operated under an Emergency Rule, an interim measure by which district courts could delegate many of their bankruptcy powers to bankruptcy judges. The Emergency Rule provided that the bankruptcy

judges shall not conduct jury trials (Revised Emergency Rule § d(1)(D)).

The Supreme Court's holding in *Marathon* necessitated the amendments to Title 28 which Congress responded to with the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). BAFJA. In addition to creating the core/non-core-related proceedings distinction under Section 157, BAFJA added § 1411(a), which provides that "this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim." 28 U.S.C. § 1411(a). The Court notes that 28 U.S.C. § 1480 did not survive BAFJA. See: Pub. L. 98–353, 98 Stat. 333, §§ 113–114.

The Court will now consider whether the defendant has a right to a jury trial as to the trustee's claims. The Court has already concluded that the proceedings herein are common law principles. The trustee is seeking monetary damages on an accounts receivable. Under the Seventh Amendment and in a non-bankruptcy court, the defendant would be entitled to a trial by jury. The issue would be triable to a jury under the common law. The request for a jury was timely demanded pursuant to Bankr.R. 9015(b)(1). Accordingly, it is the determination of this Court that the defendant is entitled to a jury to determine the issues before the Court.

■ We have studied a myriad of conflicting court decisions on the issue of trial by jury in the bankruptcy court. Equally voluminous and at variance are the scholarly articles that have been written on the subject. We have attempted to reason our way through this intellectual maze which has been made even more complex by reason of the fact that this case arose during in the Emergency Rule period after *Marathon* and before BAFJA. Interpretation of § 1411(a) (preserving any right to jury trials in certain specific cases) together with § 1480 (which did not survive BAFJA) has created fertile ground for scholarly legal writing. It has occurred to this Court, however, that a detached view of the issue affords an opportunity to make some patently valid observations. First, we find nothing in the legislation or commentaries which indicates an intention to alter the distinction between the status of Article I and Article III judicial officers. In fact, sixth circuit decisions have consistently restricted district courts in delegations of authority they themselves had made to magistrates. *Hill v. Duriron Co.* 656 F.2d 1208 (6th Cir.1981), *Thornton v. Jennings*, 819 F.2d 153 (6th Cir.1987).

Certainly, it is clear that even if a jury trial occurs in bankruptcy court the inability to enter a final judgment in a non-core, related proceeding means the parties on appeal are entitled to a trial *de novo* in the district court. This leads us to the conclusion that it makes no practical sense to have a jury trial in bankruptcy court in a non-core proceeding which is the issue before us. Further this Court believes that *Marathon* in distinguishing the authority of Article I and Article III Judicial officers can be interpreted to mean that Article I Judicial officers are not empowered to conduct jury trials, so even when a proper jury demand is presented in a core proceeding that the district court should withdraw the reference. Secondly, bankruptcy courts are historically equity courts, and are not physically equipped nor staffed to accommodate jury trials. The preservation of the distinction of Article III judicial officers, as well as a pragmatic recognition of the need for judicial economy, seems an entirely appropriate basis to withdraw the reference. 28 U.S.C. § 157(d).

■ Therefore, this adversary proceeding will be transmitted by the Clerk of this Court to the district court requesting a determination of whether the reference should be withdrawn in light of the proper jury demand.

IT IS SO ORDERED.