In re LEE WAY HOLDING
COMPANY, Debtor.

Frederick M. LUPER, Chapter 11
Trustee of Lee Way Holding
Company, et al., Plaintiffs,

v.

BANNER INDUSTRIES, INC., et
al., Defendants.

Bankruptcy No. 2–85–00661.
Adv. No. 2–86–0343.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Aug. 15, 1990.

Frederick M. Luper, Columbus, Ohio, Chapter 11 trustee.

John W. Read, Vorys, Sater, Seymour & Pease, Cleveland, Ohio.

Robert J. Sidman, Columbus, Ohio, for creditors committee.

Thomas D. Yannucci, Kirkland & Ellis, Washington, D.C.

Leon Friedberg, Columbus, Ohio, for Banner Industries, Inc. and Plymouth Leasing.

C. Steven Tomashefsky, Jenner & Block, Chicago, Ill., for Chapter 11 trustee.

## ORDER ON MOTION TO STRIKE JURY DEMAND

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This cause is before the Court on the Motion to Strike Jury Demand filed by Frederick M. Luper, the Chapter 11 Trustee ("Plaintiff" or "Trustee"), and the Opposition thereto by Defendants Banner Industries, Inc. and Plymouth Leasing Company (collectively "Banner"). At the hearing held on December 12, 1989, the parties indicated that only four counts of the Plaintiff's Complaint remain in dispute: The First Claim seeking to pierce the corporate veil under the alter-ego theory, the Second Claim seeking damages under the same theory, the Third Claim seeking damages for breach of fiduciary duty, and the Sixth Claim seeking judgment for amounts due pursuant to the tax sharing agreement between the parties. The issues raised by the parties in their Briefs are issues of first impression for this Court.

The Trustee argues first that Banner has waived any rights to a jury trial when it (a) filed a Proof of Claim in this bankruptcy case, and (b) filed a Counterclaim to the Trustee's Complaint in this adversary proceeding. In the alternative, the Trustee discusses the nature of each claim of his Complaint, insisting that no right to a jury trial attaches to any of the causes of action. Banner, of course, contradicts each aspect of the Trustee's arguments.

## I. WAIVER OF JURY TRIAL

The Trustee contends first that Banner has waived any rights to jury trial by filing of the Proof of Claim in the bankruptcy case[1], and a Counterclaim to the Trustee's Complaint. The Trustee cites numerous cases in support of his proposition, including *Granfinanciera, S.A. v. Nordberg,* — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) and *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Banner counters that neither *Granfinanciera* nor *Katchen* support the Trustee's position, but rather are more limited in scope.

The Supreme Court in *Katchen* held that, although a claimant may be entitled to a jury trial in a preference action if he presents no claim in the bankruptcy case and awaited a federal plenary action by the Trustee, the action is triable in equity when "the same issue arises as part of the process of allowance and disallowance of claims...." *Katchen,* 382 U.S. at 336, 86 S.Ct. at 476. *Granfinanciera* affirmed this. *Granfinanciera,* 109 S.Ct. at 2798–99. However, the *Katchen* Court recognized that it was not deciding whether the Bankruptcy Court had summary jurisdiction to adjudicate all issues which may come before it. The Supreme Court stated:

> Our decision is governed by the "traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure." As this is the basis for our decision, we obviously intimate no opinion concerning whether the referee has summary jurisdiction to adjudicate a demand by the Trustee for affirmative relief, all of the substantial factual and legal bases for which have not been disposed of in passing on objections to the claim. (Citations omitted.)

---

1. On August 14, 1985 and June 15, 1987, Banner filed Proofs of Claim in the aggregate amount of approximately $22,800,000.

*Katchen,* 382 U.S. at 332 n. 9, 86 S.Ct. at 474 n. 9. This has been interpreted by a multitude of courts to indicate that the waiver articulated by the Supreme Court in *Katchen* was not as pervasive as the Trustee would have this Court hold. The Fifth Circuit has recognized this in a long line of cases. *See, Flournoy v. Ford Motor Credit Company (In re Bryant),* 626 F.2d 492 (5th Cir.1980), and cases cited therein.

Most importantly for this Court, the Sixth Circuit Court of Appeals spoke to the issue in *Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449 (6th Cir.1982), wherein the court recognized that "the clear majority of courts have held that summary jurisdiction only extends to counterclaims arising out of the same transaction as the creditor's claim and do not reach permissive counterclaims...." *Id.,* at 456, quoting *In re Oxford Marketing Limited,* 444 F.Supp. 399 (N.D.Ill.1978). *See, e.g., McQuaid v. Owners of NW 20 Real Estate (Matter of Federal Shopping Way, Inc.,* 717 F.2d 1264 (9th Cir.1983)). *Accord, Dannerbeck v. Palmer,* 502 F.2d 686 (9th Cir.), *cert. den.* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974). The Supreme Court did not address this particular point in *Granfinanciera,* and there is nothing in the Bankruptcy Code which compels this Court to hold otherwise. Thus, Banner has not lost its right to jury trial.

## II. SEVENTH AMENDMENT RIGHT TO JURY TRIAL

█ For a right to jury trial to exist, there must be some initial authority, either statutory or Constitutional. Banner rests its claim to a jury trial on the Seventh Amendment. The Seventh Amendment preserves suits at common law which have come to be understood as "suits in which *legal* rights are to be ascertained and determined, in contradistinction to those where equitable rights alone are recognized, and equitable remedies are administered." *Granfinanciera, S.A.,* 109 S.Ct. at 2790, quoting *Parsons v. Bedford,* 3 Pet. (28 U.S.) 433, 447, 7 L.Ed. 732 (1830). The test courts must apply when determining whether rights are legal or equitable in nature was set out clearly in the Supreme

Court's recent decision in *Granfinanciera, S.A. v. Nordberg.* There, the Court enunciated the following three-part analysis. First, a court must compare the current action to 18th Century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, a court must examine the actual remedy sought and determine whether it is legal or equitable in nature. This second part of the analysis is the most important stage of the analysis according to the Supreme Court. Finally, if part one and part two of the analysis indicate that a party is entitled to a jury trial, a court must then "decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder." [Footnote omitted.] *Granfinanciera,* 109 S.Ct. at 2790.

### A. *First and Second Claim*

█ In the case at bar, the Trustee moved to strike Banner's demand for a jury trial as to those claims which are based upon the theory of alter-ego. The Trustee argues that his claims against Banner are equitable in nature and therefore under traditional Seventh Amendment analysis, Banner has no right to a jury trial. Conversely, Banner argues that the underlying basis of the Trustee's claims are of a legal nature, and thus carry a right to trial by jury.

Initially, this Court is concerned with part one and part two of the analysis as they apply to the Trustee's claims brought under the alter-ego theory. Under the test set out in *Granfinanciera,* the Court must first determine the pre-merger practice in regard to the claim of alter-ego made against Banner. Put another way, the Court must ask whether the Trustee would have had a common law right to bring his alter-ego action against Banner at law in 18th Century England, and whether, consequently, a court of equity would have lacked the authority to adjudicate it.

There is a lack of clear historical development to trace the nature of the alter-ego

doctrine itself and the various ways it has been applied to pierce the corporate veil. The Supreme Court's decision in *Bangor Punta Operations, Inc. v. Bangor & Aroostock R.R. Co.,* 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974), relied upon by the Trustee, is but one example of how the alter-ego doctrine has been applied by the courts. Both the Trustee and Banner discuss cases that characterize the alter-ego doctrine as both legal and equitable. The test set out in *Granfinanciera,* however, does not accommodate all of the exceptions that have been created by courts throughout the years. The Supreme Court clearly stated that when determining whether an issue is legal or equitable, one should initially refer to the historical nature of that issue.

Historically, the action of piercing the corporate veil sounds in equity. *See, Bangor Punta* at 713, 94 S.Ct. at 2584 ("courts of equity pierce corporation fictions and disguises"). The cases relied upon by the Trustee in his present action confirm this historically equitable practice of applying the alter-ego doctrine as a means of piercing a corporate veil when the retention of corporate status would produce injustice or inequitable consequences. *See, U.S. v. Golden Acres, Inc.,* 684 F.Supp. 96 (D.Del. 1988) (citing *Bangor Punta, supra*). Moreover, the claim for piercing the corporate veil evolved from a cause of action in equity called a "creditors' bill". P. Blumberg, *The Law of Corporate Groups, Substantive Law,* 53 (1987). Banner even conceded the equitable nature of the alter-ego doctrine in its own Memorandum. Banner Memorandum at 4, 5.

Banner's arguments in favor of finding the Trustee's alter-ego claims as legal in nature are unfounded, and completely misapply the first part of the *Granfinanciera* test, because the arguments rely on judicial exceptions rather than on how the alter-ego

doctrine was applied before the merger of the courts of law and equity.[2] Neither the first, second, or third parts of the analysis set out in *Granfinanciera* would warrant an analysis of the exceptions various courts have carved out through the years when dealing with the alter-ego doctrine. In *Granfinanciera,* the Supreme Court painstakingly reviewed the 18th Century English cases that decided issues of fraudulent transfers to see exactly how this particular cause of action was handled—legally or equitably. *Granfinanciera,* 109 S.Ct. at 2791. The Court made absolutely no reference to current 20th Century treatment of fraudulent transfers because how courts have been treating the cause of action in the 20th Century is irrelevant.

Thus, Banner's exhaustive discussion of how the Trustee must show the "underlying issue" is unpersuasive and counterproductive because it revolves around judicial exceptions rather than historical application. For example, Banner's quote from the Supreme Court's opinion in *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) is unpersuasive because Banner applied the quote out of its context. In *Ross,* the Court had to decide whether the Seventh Amendment guaranteed the right to a jury trial in a stockholder's derivative suit. The Court ultimately held that the shareholders' right to a jury trial attached to those issues in derivative actions which the corporation, if it could sue in its own right, would have been entitled to a jury. The Court's rationale was based on the fact that although a derivative suit was actually an equitable remedy, it was created to enforce a corporation's legal cause of action against corporate officers, directors, and third parties. Because a prerequisite for a derivative suit is a valid claim on which the corporation could have sued, the Court believed that equitable de-

---

**2.** Banner first cites *Bucyrus–Erie Co. v. General Prods. Corp.,* 643 F.2d 413 (6th Cir.1981), claiming that under Ohio law the Trustee must show three elements before he can prevail in an alter-ego claim. It is unclear whether Banner cites this case in connection with the *Granfinanciera* test. In any case, if this Court ultimately decides that Banner is entitled to a jury trial, the

trial is the stage at which these elements must be proven to exist in order for the Trustee's alter-ego claim to prevail. The three-part analysis in *Granfinanciera,* however, does not require any such showing before deciding whether an alter-ego claim was considered an equitable cause of action before the merger of the courts of law and equity.

rivative suits played a dual role that posed no Seventh Amendment problems. The result of the *Ross* decision was a very narrow judicial exception that focused on the parties bringing the action in addition to the action itself.

Therefore, when the *Ross* Court stated that "[t]he Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action," the Court was specifically referring to a situation where the mere identity of the party bringing the action changed the nature of the action from legal to equitable—not whether the cause of action itself was equitable or legal. *Ross*, at 537, 90 S.Ct. at 737–38. The Court in *Ross* went on to state that "[t]he heart of this action is the corporate claim," and that if the corporate claim presents a legal issue, the right to a jury is not forfeited merely because the stockholders have an equitable right to sue. *Id.*, at 539, 90 S.Ct. at 738–39.

Banner's reliance on *Ross* and other cases for the establishment of a jury trial right under the Seventh Amendment is therefore distinguishable from the case at bar because the issues and the parties are different. Moreover, and most importantly, *Ross* is but one more judicial exception that this Court is not to consider when it applies the three-part test in *Granfinanciera*.

The second part of the Seventh Amendment analysis set out in *Granfinanciera* concerns the nature of the remedy sought by the complaining party. This is the most important part of the analysis when determining the overall equitable or legal nature of a cause of action. *Granfinanciera*, 109 S.Ct. at 2790, citing *Tull v. United States*, 481 U.S. 412, 421, 107 S.Ct. 1831, 1837, 95 L.Ed.2d 365 (1987). When considering the remedy, the fact that a money judgment *may* result from an equitable remedy does not change the equitable nature of the remedy itself. *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *Whitlock v. Hause*, 694 F.2d 861 (1st Cir.1982); *Towers v. Titus*, 5 B.R. 786, 792 (Bankr.N. D.Cal.1979). Conversely, the Court must consider the nature of the remedy sought,

regardless of how the remedies have been labeled by the pleader. *Id.* As a result of this, a careful inquiry must be made as to the actual remedies sought for each claim, and as to whether a remedy at law exists for each claim.

The Trustee in the instant case has requested a judgment declaring that Banner was the alter-ego of the Debtor, that Banner's assets should equitably be deemed part of the bankruptcy estate and that Banner is liable for all of the Debtor's unsecured debts. Declaratory relief has been established as an equitable remedy, *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948); *Holup v. Gates*, 544 F.2d 82 (2d Cir.), *cert. denied sub nom Gates v. DeLorenzo*, 430 U.S. 941, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1976), and indeed, Banner conceded in its Memorandum that the action of piercing the corporate veil results in an equitable remedy. Banner Memorandum at 4, 5.

After considering the first two parts of the three-part analysis set out in *Granfinanciera*, this Court finds that the Trustee's Motion to Strike Banner's jury demand on the alter-ego issues must be granted. Based on the historical nature of the alter-ego doctrine, and the nature of the remedy sought by the Trustee, the alter-ego claims set forth in the First and Second Claims of the Trustee's Complaint are equitable, and thus, are not afforded a right to a jury trial.

### B. *Third Claim*

■ The Trustee, in his Third Claim for Relief in the Complaint, seeks at least $1,000,000.00 in damages against Banner for breach of fiduciary duty. The alleged breach occurred when Banner failed to deal at arms' length with the Debtor regarding certain transactions, described by the parties as: the Banner guaranteed debt amount, the transfers of the Plymouth properties, the Indemnification Agreement, the Tax–Sharing Agreements, and the Tax–Sharing Amendment. The Trustee states that in all of the above-mentioned transfers, the Debtor received less than adequate consideration. In essence, the Trust-

ee alleges fraudulent conveyances avoidable under § 548 of the Bankruptcy Code. The issue before the Court is whether, amidst a Chapter 11 bankruptcy proceeding, there is a right to a jury trial in an action for breach of fiduciary duty.

In *Granfinanciera,* the Supreme Court had to decide whether a creditor had a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer. The Supreme Court found that "respondent would have had to bring his action to recover an alleged fraudulent conveyance of a determinate sum of money at law in 18th Century England and that a court of equity would not have adjudicated it." *Granfinanciera,* 109 S.Ct. at 2792–93. With regard to the remedy sought, the Court stated that "insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal." *Granfinanciera,* quoting *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 476, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962). The Court concluded that the Petitioner/creditor was entitled to a jury trial.

In the instant case, however, the action is not one to avoid a fraudulent transfer, but for damages for breach of fiduciary duty. Of those jurisdictions that have considered actions for breach of fiduciary duty, most applied the same test discussed in *Granfinanciera,* and found that such an action is historically an action that sounded in equity. However, as noted by Banner, where the breach of fiduciary duty is predicated on acts which can be brought in a direct suit at law, then the issue is a legal one to be heard by a jury. *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *DePinto v. Provident Security Life Insurance Company,* 323 F.2d 826 (9th Cir.1963); *Smith v. ABS Industries,* 653 F.Supp. 94 (N.D.Ohio 1986); *In re Globe Parcel Service,* 75 B.R. 381 (E.D.Pa. 1987).

The Trustee's Third Claim asserts a claim for breach of fiduciary duty, but the underlying conduct that gave rise to the breach was the alleged fraudulent transfer of the items listed in the Complaint. Using the first prong of *Granfinanciera* test and the Supreme Court's holding in that case, it is clear that an action to avoid a fraudulent conveyance is an action at law. *See also, Halladay v. Verschoor,* 381 F.2d 100 (8th Cir.1967).

The next prong in the test looks to the type of remedy sought by the party. In the Third Claim, the Trustee prays for damages that resulted from Banner's breach of fiduciary duty "in an amount believed to be in excess of $1,000,000." Amended Complaint at 15. It is well-settled that "where an action is simply for the recovery ... of a money judgment, the action is one at law." *Whitehead v. Shattuck,* 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891).

The Trustee argues that he is seeking restitution which is an equitable remedy. It seems the Trustee realized his mistake in seeking money damages. The Complaint, however, prays for money damages and it is the Complaint upon which the Court relies and ultimately rules.

The Court finds that under the first prong of the test most recently articulated in *Granfinanciera,* an action for breach of fiduciary duty is an historically equitable action. Subsequent case law, however, has held that where a fiduciary breach arises out of acts, which, by themselves, permit a direct suit at law, then the case is legal in nature and subject to a jury trial. The Court also finds that the Trustee seeks monetary damages, a legal remedy, and under the second prong of the *Granfinanciera* test, a legal remedy brings with it a jury trial. Both prongs of the *Granfinanciera* test, as applied here, guarantee Banner a jury trial.

### C. Sixth Claim

When CLMF ceased to be a wholly owned subsidiary of Banner, CLMF could no longer be included automatically in a consolidated tax return with Banner. Therefore, on June 6, 1983, Banner and CLMF entered into a Tax Sharing Agreement whereby Banner was able to include CLMF on a consolidated tax return just as it had done prior to the implementation of

the Employee Stock Option Plan ("ESOP") program. Apparently, the Tax Sharing Agreement set forth payments (designed "Tax Sharing Funds") that were to be made by Banner to CLMF for the tax benefits Banner derived therefrom. The parties subsequently entered into Amendments to the Agreement, under which Banner could delay payments and could set off the Tax Sharing Funds by amounts that CLMF owed Banner.

In his Sixth Claim for Relief, The Plaintiff/Trustee maintains that Banner breached its contractual obligations under the Tax Sharing Agreement in that it failed to pay CLMF the full amount due under the Agreement, which Plaintiff alleges is an undetermined amount of not less than $4,500,000.00. Hence, the Trustee alleges that pursuant to Section 541(a) of the Bankruptcy Code, the Tax Sharing Funds constitute property of the Debtor's estate, and that by virtue of Section 542(a), Banner must "account" for the Tax Sharing Funds in order to determine the precise amount due. The Trustee asserts that the claim, while framed as a breach of contract issue, is in actuality an equitable action since it is necessarily wedded to the alter-ego and fiduciary duty claims. In a significant expansion of the facts and claims set forth in his Complaint, the Trustee maintains that Banner's set-off rights and right to delay payment under the Amendments resulted from Banner's domination and control over Debtor's Board of Directors. Therefore, at issue, the Trustee asserts, is whether the Amendments to the Agreement were valid arms-length transactions subject to review under contract law or the result of wrongful domination and control over the Debtor which can only be determined by an accounting in equity. Should the Court determine the claim to be based in law, a jury trial would be necessitated, whereas no jury trial would be allowed if the claim is determined to be equitable. While not citing any authority on the issue, the Trustee apparently would have this Court conclude that these additional factors move this issue beyond a breach of contract action at law to one based in equity.

Banner maintains that at issue is simply a legal determination of whether it breached the contract by not paying the full remuneration due under the Agreement. Banner argues that the Trustee's Complaint requests that Banner be directed "to account to the Trustee" for the simple purpose of calculating monetary damages, which is not an "accounting" of the kind that would render this an action in equity. Banner cites *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), for the proposition that a suit based on breach of contract seeking an "accounting" of sums due is traditionally legal in character and, as such, Banner's demand for a jury trial is proper. Banner argues that *Dairy Queen* mandates looking beyond the words in the pleadings to the nature of the claim at issue.

To determine whether the action before the Court would have been brought in an English court of law or equity prior to ratification of the Seventh Amendment, the Court must conclude whether this is solely a breach of contract claim or whether Plaintiff is truly seeking an equitable accounting. Actions for monetary relief, such as recovery for breach of contract, did not sound in equity two hundred years ago. *Granfinanciera,* 109 S.Ct. at 2791. If, on the other hand, the Trustee needs the aid of an accounting, such an action would have been at equity in English courts prior to the enactment of the Seventh Amendment. *Granfinanciera,* at 2791, quoting 1 G. Glenn, *Fraudulent Conveyances and Preferences* § 98, pp. 183–184 (rev. ed. 1940). Glenn's treatise, in addressing fraudulent transfers, stated that if the fraudulent transfer was of cash, the action would be for money had and received. As such, an action at law is available to the Trustee today as it was in the English courts long ago.

Here the action is one for breach of contract. Central to the dispute is the amount of money Banner allegedly withheld from the Debtor. Thus, English courts, prior to the enactment of the Seventh Amendment, would have heard this action in a court of law.

The second step of the *Granfinanciera* test requires a determination as to whether the remedy prayed for is inherently legal or equitable in nature. In order to reach a conclusion on this issue, the Court must address several sub-issues. They are:

i) Does this breach of contract claim stand alone or is it necessarily tied to equitable claims such as alter-ego and breach of fiduciary duty?

ii) Did Plaintiff request an equitable accounting in his Complaint?

iii) Is an equitable accounting necessary to the successful resolution of this claim?

The Court will address each of these sub-issues separately.

i) Does this breach of contract claim stand alone or is it necessarily tied to equitable claims raised in the Complaint?

It is clear that the Trustee's Sixth Claim for Relief is based on breach of contract. Trustee specifically predicates his right to recovery on the terms of the Tax Sharing Agreement. While elsewhere in the pleadings, the Trustee does raise claims of alter-ego and fiduciary duty, it is apparent from a thorough reading of the Complaint that the breach of contract issue involving the Tax Sharing Agreement is set apart from all other claims.

> The question whether remedy must be by action at law or may be pursued in equity notwithstanding objection by defendant depends upon the facts stated in the bill. And, in absence of a clear showing that a court of law lacks capacity to give relief ... a suit in equity cannot be maintained. [Citations omitted.]

*Schoenthal v. Irving Trust Co.,* 287 U.S. 92, 95, 53 S.Ct. 50, 77 L.Ed. 185 (1932). *See also, Dairy Queen v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962). In *Schoenthal,* the bankruptcy trustee sought recovery in equity for alleged preferential payments maintaining that no adequate remedy at law existed. The *Schoenthal* court held that suits in equity will not be sustained where a complete remedy ex-

ists at law. The right to a trial by jury, which is preserved by the Seventh Amendment, should be liberally construed. *Schoenthal,* 287 U.S. at 94, 53 S.Ct. at 51. Likewise here, the breach of contract claim will stand or fall on its own merits. A jury may determine whether the contract was breached and if so, the damages occasioned by the breach. The alter-ego and fiduciary duty claims have been pled separately and have been addressed. When one person has money belonging to another, the other person may recover the money had and received. The remedy at law is adequate and complete. *Gaines v. Miller,* 111 U.S. 395, 397–398, 4 S.Ct. 426, 426–427, 28 L.Ed. 466 (1884).

Banner's propitious citation to *Dairy Queen v. Wood, supra,* illustrates the distinction between legal claims based on breaches of contract and those claims solely equitable in nature. A claim for a money judgment is exclusively legal in nature no matter how the complaint is construed. *Dairy Queen,* 369 U.S. at 477, 82 S.Ct. at 899–900. In *Dairy Queen,* owners of the Dairy Queen trademark sued petitioner claiming it had breached the contract to pay $150,000.00 for exclusive use of the trademark in Pennsylvania. The trademark owners sought temporary and permanent injunctions to restrain petitioner from further use of the franchise and trademark, an accounting to determine the exact amount of money due, a judgment for that amount, and a separate injunction prohibiting the petitioner from collecting any money from the Dairy Queens in that territory. The Supreme Court in *Dairy Queen* held that even when legal and equitable claims are maintained in the same action, only under the most *imperative* of circumstances, which the Court could not then envision, would the right to a jury trial on the legal issues be lost through prior determination of equitable claims. *Dairy Queen,* 369 U.S. at 472, 473, 82 S.Ct. at 896–897, 897. Thus, even though the Trustee in the instant case might also maintain alter-ego claims in equity, those other claims do not subsume the legal claim of breach of contract. As long as any legal cause of action is involved, the

jury rights it creates control. *Dairy Queen,* 369 U.S. at 473 n. 8, 82 S.Ct. at 897 n. 8, citing *Thermo–Stitch, Inc. v. Chemi–Cord Processing Corp.,* 294 F.2d 486, 491 (5th Cir.1961).

■ The Sixth Claim, as in the action in *Dairy Queen,* is to collect amounts allegedly due under a contract; as the Court in *Dairy Queen* noted, it would be difficult to conceive of an action that was a more traditionally legal in nature. Even if, as the Trustee maintains, the issues of alter-ego and fiduciary duty are integral or even overriding components of his Complaint, the legal nature of the breach of contract claim is not diminished. Each claim or issue which the Court finds to be legal in nature is entitled to trial by jury, without regard to the other aspects of the case or to the character of the overall action. *Dairy Queen,* 369 U.S. at 473, 82 S.Ct. at 897.

    ii) Did Plaintiff request an equitable accounting in its Complaint?

In seeking to recover funds due under the Tax Sharing Agreement, the Trustee asserts that because the amount of money due under the Agreement is undetermined, the aid of an accounting is required. Since an accounting is an action in equity, the Trustee concludes that complete relief is not attainable at law, citing *Granfinanciera,* 109 S.Ct. at 2791, 2794 and *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir. 1985). This is not, however, precisely what is stated in the Sixth Claim of the Complaint. There, the Trustee seeks the "full amount due" under the Tax Sharing Agreement, which he alleges Banner breached. The Complaint demands that Banner "account for" the Tax Sharing Funds as detailed in Section 542(a) of the Bankruptcy Code so that an exact determination can be made of the funds Banner owes the estate. The Trustee merely extrapolated the precise language of the Code.

Section 542(a) of the Bankruptcy Code states:

Except as provided in subsection (c) and (d) of this section, an entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell or lease under § 363 of this title, or that the debtor may exempt under § 522 of this title, shall deliver to the trustee, and *account for* such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. [Emphasis added.]

The House and Senate Reports on this subsection state that the intent of the Code language is to require persons holding property of the estate on the date of the filing of the petition to deliver it to the trustee and, in addition, provide an accounting. H.R.Rep. No. 595, 95th Cong., 1st Sess. 369 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 84 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5870, 6325. Significantly, however, the Supreme Court in *Dairy Queen* held that an action on a debt is clearly legal in nature despite the choice of words in the pleading. *Dairy Queen,* 369 U.S. at 478, 82 S.Ct. at 900. Further, it has been held that in order to bring any equitable accounting action a prior demand by the plaintiff for an accounting and a refusal by the defendant to account is a prerequisite to bringing an action for an accounting. *Keller Research Corp. v. Roquerre,* 99 F.Supp. 964 (S.D.Cal. 1951). The plaintiff must allege such prior demand in his pleading. The demand need not be in any particular form, provided it is sufficiently explicit to leave no room for doubt in the defendant's mind as to the plaintiff's request. *Wiegardt v. Becken,* 8 Wash.2d 568, 113 P.2d 60 (1941). Here, at the very least, the Trustee did not clearly articulate his demand for an equitable accounting.

    iii) Is an equitable accounting necessary to the successful resolution of this claim?

■ Even if an "accounting", a traditionally equitable remedy, is sought, this is not dispositive of the jury trial issue. In order

for a claim to be truly "equitable", it must appear that the substantive claim is one traditionally cognizable only in equity, or that the "accounts between the parties" are so complicated in nature that the only way in which they can be successfully solved is in a court of equity. *Kirby v. Lake Shore and Michigan Southern R. Co.,* 120 U.S. 130, 134, 7 S.Ct. 430, 432, 30 L.Ed. 569 (1887). *See also, Ross v. Bernhard,* 396 U.S. 531, 538 n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970).[3]

■ In *Dairy Queen,* which included a prayer for an accounting in an otherwise legal action, the Supreme Court significantly limited the availability of an equitable accounting. As in *Dairy Queen,* the Trustee here maintains that his claim for monetary relief based on the Tax Sharing Agreement is an equitable claim, because he requests an accounting. Even if this Court subscribes to Trustee's argument that he had originally asserted an equitable claim, the *Dairy Queen* Court held that the constitutional right to a jury trial does not rest solely on the words used in the pleadings. In order to maintain a suit for an equitable accounting, it is necessary that there be an absence of an adequate remedy at law. *Dairy Queen,* 369 U.S. at 478, 82 S.Ct. at 900. As noted by the *Dairy Queen* Court, even where cases involve difficult and complex issues, courts have the power to appoint masters to assist juries in complicated cases. It is thus a rare exception when an accounting in an otherwise legal claim would necessitate the denial of a jury in order for a court of equity to hear the complaint. "[I]n actions sounding in account and contract there is a right to a jury trial under the Seventh Amendment to the

Constitution." *Matter of Kakolewski,* 29 B.R. 572 (Bankr.D.Mo.1983).[4]

## III. JURY TRIAL BEFORE BANKRUPTCY COURT

■ This brings to the fore the question of whether a jury trial can be conducted before this Court. Although the parties did not raise the issue, it is plainly before the Court and the Court would be remiss if it did not address the question.

Much discussion has been had surrounding the subject of the propriety of jury trials before a bankruptcy court. The only statute giving guidance on the issue of jury trials in bankruptcy proceedings is 28 U.S.C. § 1411 (1982 Ed.Supp. IV), enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 333 (BAFJA). This provision, as noted by the Supreme Court, is "notoriously ambiguous." *Granfinanciera, S.A.,* 109 S.Ct. at 2789 n. 3. Nonetheless, the Supreme Court expressly declined to address the issue. *Granfinanciera,* 109 S.Ct. at 2802. Notwithstanding, courts have interpreted *Granfinanciera* to support both sides of the issue. *See, e.g., Hughes–Bechtol, Inc. v. Air Enterprises, Inc. (Matter of Hughes–Bechtol, Inc.),* 107 B.R. 552 (Bankr.S.D.Ohio 1989) ("[T]he Supreme Court has determined that Congress has limited power to provide authority for non-Article III courts to adjudicate issues requiring a jury trial."); *Ben Cooper, Inc. v. The Insurance Company of the State of Pennsylvania (In re Ben Cooper, Inc.),* 896 F.2d 1394 (2d Cir.1990) ("If bankruptcy courts have the power to enter final judgments without violating Article III, it follows that jury verdicts in bankruptcy

---

**3.** The Supreme Court in *Granfinanciera* followed the first two steps of the analysis outlined in *Ross;* the Court did not address the third step of *Ross.* The *Ross* Court, in addition to addressing pre-merger custom and remedy sought, also considered the practical abilities and limitations of juries. A review of that issue in addition to the others is helpful to the resolution of this case.

**4.** The Trustee's citation to *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007 (7th Cir.1985) is misplaced. There the court held that the plaintiff was not entitled to an

equitable accounting because, despite it being pled, a court may refuse to award an equitable accounting to a party who has an adequate remedy at law. In *First Commodity,* the parties could ascertain the correct amount of compensation due the plaintiff by a simple review of contract and records of payments made to date. Likewise in the case before this Court, a resolution of the Trustee's claim can be had by interpretation of the Tax Sharing Agreement and Amendments, calculation of the amounts due under the Agreement, and records of any payments made. Such an action is legal in nature.

courts do not violate Article III."). To add to the confusion, a distinction is often drawn along the lines of the existing dichotomy between core and non-core proceedings. *See, e.g. Ben Cooper, Inc., supra; City Bank, N.A. v. Park–Kenilworth Industries, Inc.,* 109 B.R. 321 (N.D.Ill. 1989); *Kroh Bros. Development Company v. United Missouri Bank of Kansas City, N.A. (In re Kroh Bros. Development Company),* 108 B.R. 710 (Bankr.W.D.Mo.1989). It appears that a majority of the courts which have considered the issue find that bankruptcy courts are authorized to hold jury trials. *Ben Cooper, Inc.,* 896 F.2d at 1402; *Park–Kenilworth,* 109 B.R. at 328.

The Court need not analyze the cases and their respective theories in light of Judge Waldron's exhaustive review in *Hughes–Bechtol,* and the extensive discussion by Judge Lay of the Eighth Circuit Court of Appeals in *In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d 1449 (8th Cir. 1990). Nor need the Court reiterate the analysis in those cases. Suffice it to say that this Court finds Judge Waldron's and Judge Lay's opinions to completely address the issue, and this Court adopts their rulings. The Court finds particularly cogent the remarks of Judge Waldron wherein he notes the statements of the Supreme Court in *Northern Pipeline Construction Company v. Marathon Pipe Line Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Judge Waldron observed, correctly in this Court's opinion, that the constitutional infirmities recognized in *Northern Pipeline* were not sufficiently cured by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA) so as to allow this Court to preside over jury trials. Although it may be "clear beyond cavil, that Congress intended that core proceedings be resolved ... in bankruptcy court," *In re Kroh Bros. Development Company v. United Missouri Bank of Kansas City, N.A. (In re Kroh Bros. Development Company),* 108 B.R. 228 (W.D.Mo.1989), the bankruptcy court is simply without jurisdiction to conduct the jury trial to which Banner is entitled. In non-core matters, any such grant violates the Seventh Amendment and the United States Constitution; in core matters, such a grant violates Arti-

cle III of the United States Constitution. *Hughes–Bechtol, Inc., supra; Ellenberg v. Bouldin (In re Bouldin),* adversary proceeding no. 86–0729A, 1990 WL 95746 (Bankr.N.D.Ga. Jan. 19, 1990). *See also, In re United Missouri Bank of Kansas City, N.A., supra;* Ferriell, *Constitutionality of the Bankruptcy Amendments and Federal Judgeship Act of 1984,* 63 Am.Bankr.L.J. 109 (1989).

The Court recognizes that a significant number of courts have reached contrary conclusions on these issues. However, even if this Court is empowered to preside over a jury trial in the core matters in this adversary proceeding, and such authorization is not constitutionally abhorrent, the non-core aspects of this case require the entire adversary proceeding to be transferred to the District Court. The dictates of the Seventh Amendment and this Court's discussion in *Stewart v. Strasburger (In re Astrocade, Inc.),* 79 B.R. 983 (Bankr.S.D. Ohio 1987), mandate that the non-core aspects of this case be transmitted to the District Court for a determination of whether the reference should be withdrawn in light of the jury demand. This Court is of the opinion, at least at this stage, that the numerous claims in this adversary proceeding are so intertwined as to make it impracticable to bifurcate this matter for trial. Of course, the complexion of this adversary proceeding may change as it progresses through discovery, in which case, the District Court may refer to this Court such claims as would be appropriate to try here. At present, however, it appears most appropriate to transmit the entire adversary proceeding for District Court disposition. The Trustee has filed a Motion for authority to compromise this and other controversies with Banner. Accordingly, the Court will postpone transmittal of this adversary proceeding until resolution of the Motion. If the Motion is granted, transmittal will be unnecessary, as the issues discussed herein will be moot.

## IV. CONCLUSION

In summary, the Court finds that: (1) Banner has not waived its rights to jury trial by filing of a Proof of Claim in this bankruptcy case nor by filing a Counter-

claim to the Trustee's Complaint. (2) Banner has a right to a jury trial in connection with the Third and Sixth Claims of the Plaintiff's Complaint. The Plaintiff's Motion to Strike Jury Demand is denied as to the Third and Sixth Claims, and granted as to the remaining aspects of this adversary proceeding. (3) This Court is without jurisdiction to conduct a jury trial in core and non-core proceedings. In the event that the Trustee's Motion to Compromise is denied, upon further Order of this Court, this matter will be transmitted to the District Court for a determination of whether the reference should be withdrawn in light of the proper jury demand by Banner.

IT IS SO ORDERED.