In re **HURRICANE R.V. PARK, INC.,** Debtor.

Bankruptcy No. 91C–28133.

United States Bankruptcy Court, D. Utah.

June 18, 1995.

612

George W. Pratt, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT, for Hurricane R.V. Park, Inc.

William F. Colgin, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Scott M. Matheson, Jr., U.S. Atty., Salt Lake City, UT, for U.S.

## ORDER DIRECTING RELEASE OF LIENS

GLEN E. CLARK, Chief Judge.

This matter came before the court on January 5, 1995, on Hurricane R.V. Park, Inc.'s Motion to Enforce the Bankruptcy Discharge and Hold the Internal Revenue Service in Civil Contempt. At the hearing on this matter, the United States appeared as the proper party to this matter in place of the Internal Revenue Service ("IRS"). George W. Pratt, Esq., appeared in behalf of Hurricane R.V. Park, Inc., and William F. Colgin, Esq., appeared in behalf of the United States.

The court has received briefs from both parties and after considering the evidence presented and argument of counsel and being fully advised, the court makes the following ruling:

### FACTS

Hurricane R.V. Park, Inc. ("Hurricane") filed a chapter 11 petition on December 26, 1991. The IRS was given notice of Hurricane's petition and filed three proofs of claim, the most recent of which was filed, on December 22, 1992, as a zero proof of claim. Hurricane's plan did not provide for the retention of any interest in property by the IRS or payment to the IRS. On January 19, 1993, this court entered an order confirming Hurricane's plan of reorganization. The IRS did not object to Hurricane's plan of reorganization.

In April 1994, the IRS filed tax liens in Washington County against parcels of real property owned by Hurricane. This property was owned by Hurricane pre-petition and was fully disclosed on the schedules and statements. The property was included as a material part of the plan of reorganization and, by virtue of 11 USC § 1141, the property was fully vested in the estate of the reorganized debtor, Hurricane.

The tax liens, filed by the IRS, indicate that the "Name of Taxpayer" is "HURRI-

CANE R.V. PARK, INC. NOMINEE, ALTER EGO, TRANSFEREE OR AGENT OF PHILLIP S. FRY" and state as follows:

This notice of lien is filed for the purpose of giving public notice that the United States claims lien rights against any right, title, or interest that Philip S. Fry has in the [property].

Philip S. Fry ("Fry") is the vice-president of Hurricane but holds no ownership interest in the corporation. The assessment dates on the tax liens range from August 1985 to October 1991. None of the tax liens was filed prior to Hurricane's petition date.

### DISCUSSION

■ Although Hurricane's plan of reorganization was confirmed on January 19, 1993, this court retains jurisdiction to interpret its own orders as necessary to effectuate the debtor's confirmed plan of reorganization. *In re Tri–L Corp.*, 65 B.R. 774 (Bkrtcy. D.Utah 1986).

■ The effect of an order of confirmation is codified in 11 U.S.C. § 1141 which binds the debtor, any entity acquiring property under the plan and any creditor, equity security holder, or general partner in the debtor whether or not such creditor, equity security holder, or general partner has accepted the plan. It also discharges the debtor from any debt that arose before the date of confirmation. Once a discharge is issued, 11 U.S.C. § 524 operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. This court is called upon to determine if the United States has violated Hurricane's discharge injunction.

■ By filing the tax liens, the United States has employed a process intended to collect or recover money or property. At issue is whether the filing of the liens was to collect a debt of Hurricane. It is undisputed that Hurricane is not directly indebted to the IRS for the taxes sought to be collected by the liens and that the tax liens were filed by the IRS in an effort to collect taxes owed by Fry. The United States argues that its tax lien is not a claim against Hurricane "because the government asserts neither a claim against the property of the debtor nor a claim against the debtor."

The tax liens on Hurricane's property are premised on the United States' theory that Hurricane is the "nominee, alter ego, transferee or agent" of Fry. However, if the United States prevails under any of its theories, the ultimate result would be in the form of a judgment against Hurricane. Under the alter ego or nominee theory, the United States must seek an equitable remedy to pierce the corporate veil in order for liability to attach to Hurricane for the tax obligations of Fry. Under the transferee theory, the Utah Uniform Fraudulent Transfer Act, U.C.A. 25–6–1 et seq., provides a remedy for the United States directly against Hurricane. Using this remedy, the United States becomes a contingent creditor of Hurricane. Under its "agency" theory, the United States must concede that if it is successful, it will become a creditor of Hurricane and, as such, is presently a contingent creditor of Hurricane within the meaning of 11 U.S.C. § 101(10) for the tax years identified on the tax liens (1974, 1975, 1976, 1977, 1978, 1979, 1980, 1984 and 1986). Under any of these four theories of recovery, the United States holds a claim that is contingent upon the outcome of litigation.

■ The terms "claim" and "debt" are defined by the Code at § 101(5) and 101(12) respectively. "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" Congress intended the meaning of "claim" and "debt" to be coextensive, and that the class of obligations that qualify as a "claim" giving rise-to "debt" be construed broadly. *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). Because the term "claim" includes contingent claims, the United States holds a claim against Hurricane based upon its nominee, alter ego, transferee or agency theory. In the case at hand, the status of the United

States as a claim holder is supported even further pursuant to 26 U.S.C. § 6321 which provides that if a corporation is the taxpayer's alter ego, the United States is empowered to impress a lien upon assets of the corporation in order to satisfy the taxpayer's liability. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). 26 U.S.C. § 6331 empowers the United States to levy upon assets held in the corporation's name in satisfaction of the taxpayer's liability if the corporation is the alter ego of the taxpayer. *Id.* An obligation enforceable only against a debtor's property is a "claim" under § 101(5) of the Code. *Johnson v. Home State Bank,* 501 U.S. 78, 85, 111 S.Ct. 2150, 2154–55, 115 L.Ed.2d 66 (1991). Accordingly, the statutory right to levy upon assets is a claim within the meaning of 11 U.S.C. § 101(5) even if a debtor is not personally liable on the obligation. *In re Yeary,* 55 F.3d 504 (10th Cir.1995).

■ The term "debt" is defined at 11 U.S.C. § 101(12) as "liability on a claim." If the United States is successful under any of its four theories of recovery, Hurricane will become liable to the United States on its claim and will owe a "debt" to the United States.

■ The United States further argues that even if the tax lien is a claim against Hurricane, it has not been discharged because Hurricane presented no evidence that the tax claim was formulated prior to confirmation of the plan. Hurricane did introduce as evidence photocopies of each of the tax liens encumbering Hurricane's property. All of the tax liens identify the "Name of Taxpayer" as Hurricane and carry assessment dates that are prior to Hurricane's petition date. The indebtedness sought to be enforced by the tax liens originated before Hurricane's petition date, December 26, 1991. It is disingenuous for the United States to now argue that the discharge does not apply to its tax liens because the claims did not arise until after the confirmation date. Because the assessment dates on the liens predate Hurricane's petition date, the United States held a claim against Hurricane on the petition date and is a "creditor" of the debtor, 11 U.S.C. § 101(10).

■ All creditors are bound by the court's order of confirmation whether or not such creditor has accepted the plan. *In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988). As a creditor, the United States is bound by the court's order of confirmation, the provisions of 11 U.S.C. § 1141 and the 11 U.S.C. § 524 injunction.

■ The United States cites *In re Lillian Nelson,* Case no. 93A–26315 (Bankr.D.Ut. August 17, 1994) for the proposition that it cannot be held in contempt because case law within this district prohibits the IRS from raising the alter ego/nominee claim in a bankruptcy case. A review of the *Nelson* transcript makes it clear that the government in the *Nelson* case was aware that the proper procedure to be followed when seeking to enforce a tax lien against an entity that has filed for protection in the bankruptcy courts is to seek relief from the bankruptcy court before proceeding to file or enforce its tax lien. At page 10 of the *Nelson* transcript, counsel for the government stated as follows:

> So, we think that we would have and—the right to and that one of the things we may need to do is file an action, get the court to lift the stay because obviously we would have to name the debtor, the estate in it to—because they may—it may legitimately not be a fraudulent transfer.

The court in *Nelson* granted relief from the automatic stay thereby permitting the government to proceed to adjudicate its alter ego theory. Here, because the Hurricane's plan has been confirmed, there is no automatic stay in effect. However, there is a plan of reorganization, an order confirming the plan, and an injunction pursuant to 11 U.S.C. § 524. In order to proceed with any action, employment of process or act to collect, recover or offset any debt of the reorganized debtor, leave of court must first be obtained in order to avoid violation of the § 524 injunction.

■ The United States argues that its liens seek only to encumber Fry's equitable interest in Hurricane. This argument is without merit and is not supported by the facts. Because 11 U.S.C. § 1141(c) provides

that "the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor[,]" any equitable interest that Fry may have had in Hurricane pre-confirmation has been extinguished by the bankruptcy confirmation process. Fry's undisputed testimony is that he is not the owner of Hurricane and holds no ownership interest in the real property owned by Hurricane. The United States cites numerous cases in support of its position including: *G.M. Leasing; Griffiths v. Commissioner,* 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319 (1939); *United States v. Miller Bros. Construction,* 505 F.2d 1031 (10th Cir.1974); and *In re Faith Missionary Baptist Church,* 174 B.R. 454 (Bankr.E.D.Tex.1994). In each of those cases, the tax lien was upheld because the United States presented evidence which proved its case. Here, the United States has offered no evidence in support of its position. The United States concedes that the liens do not enforce taxes owed by Hurricane to the IRS and the only purpose of the liens is to collect taxes owed by Fry. There is no evidence that Hurricane is the alter ego of Fry. There is no evidence that Hurricane is the nominee of Fry. There is no evidence that Hurricane is the transferee of Fry. There is no evidence that Hurricane is the agent of Fry. The only evidence before the court supports Hurricane's position that the tax liens violate Hurricane's bankruptcy discharge.

▪ The tax liens have the effect of encumbering Hurricane's property.

The tax liens have caused Hurricane's credit relationships with lenders, prospective lenders, and with prospective customers to be adversely affected.

Hurricane is unable to obtain title insurance for mobile home spaces leased to its customers because of the tax liens.

Hurricane has successfully rented most of its mobile home spaces on paved streets and must pave additional streets in order to attract additional customers.

Hurricane is unable to borrow money for the construction of additional streets because of the tax liens.

Without the construction of additional streets, Hurricane may not be capable of successfully completing its plan of reorganization as confirmed.

In its prayer for relief, Hurricane seeks only an order finding the United States to be in violation of Hurricane's § 524 discharge and an order directing the United States to purge itself of its contempt.

Based upon the above and other good cause appearing, it is hereby:

ORDERED that the United States shall release each of the above mentioned liens encumbering Hurricane's property within ten days.