In re Paul A. GROTHUES and Marilyn Grothues, Debtors.

Paul A. Grothues and Marilyn Grothues, Appellants,

v.

Internal Revenue Service, Appellees.

Bankruptcy No. 97–50747.
Adversary No. 96–05146.
CIV.A. No. SA–97–CA–1171–OG.

United States District Court,
W.D. Texas,
San Antonio Division.

May 25, 1999.

Dean William Greer, Attorney at Law, San Antonio, TX, for appellant.

Louise P. Hytken, Department of Justice, Tax Division, Dallas, TX, for appellee.

## ORDER AFFIRMING, IN PART, AND REVERSING, IN PART, BANKRUPTCY COURT RULING

GARCIA, District Judge.

In this appeal, Debtors Paul A. Grothues and Marilyn Grothues challenge the bankruptcy court's April 8, 1997 order granting the Internal Revenue Service's (IRS) motion for summary judgment on their claim that they were discharged from liability for certain excise taxes of two corporations they operated. The Grothues argue that the bankruptcy court erred in ruling that Marilyn Grothues's guilty plea to tax evasion established, as a matter of law, that

her liability for the taxes was non-dischargeable under 11 U.S.C. § 523(a)(1)(C). In addition, they maintain that the bankruptcy court neglected to address Paul Grothues's liability, which must be analyzed differently because he was never charged with any tax evasion crime. Finally, the Grothues contend that the bankruptcy court erred in alternatively holding that it had no jurisdiction to consider the underlying tax liability of the two corporations. For the reasons stated below, the Court disagrees with the bankruptcy court's characterization of the IRS's claim against the Grothues and reverses, in part, its order granting summary judgment in favor of the IRS as to the non-dischargeability of the debts at issue. The Court affirms, however, as to the bankruptcy court's ruling that it lacked jurisdiction to consider the underlying tax liability of the two corporations.

### I. *Factual Background.*

The Grothues were principal owners of two corporations that wholesaled diesel motor fuel: the Southwest Oil Company of Jourdanton (SWOJ) and the Southwest Oil Company of Eagle Pass (SWEP). On March 20, 1987, the couple jointly filed for bankruptcy under Chapter 11. A trustee was appointed a few years later, and eventually, on August 14, 1992, the Grothues's reorganization plan was confirmed.

Approximately one year after plan confirmation, Marilyn Grothues entered a guilty plea to count nine of a multi-count indictment charging her with tax evasion under 26 U.S.C. § 7201. While that count dealt only with a small portion of the excise taxes owed by SWOJ and SWEP, in her plea agreement Mrs. Grothues agreed to pay all the back taxes, penalties and interest owed by both corporations.[1] Despite that agreement, Mrs. Grothues failed to make good on her promise, and the IRS began its efforts to collect the taxes.

In early March, 1996, the IRS sent notices of tax liens to Paul A. Grothues and Marilyn Grothues, identifying each as the nominee or alter ego of the companies. The notices concerned the corporations' excise tax liability for tax periods commencing in 1986 and ending in 1990, with assessment dates ranging from September of 1986 to December of 1994. Thus, some of these taxes were for pre-petition periods, and all periods were pre-confirmation. Yet, the IRS had not filed any bankruptcy claim against the Grothues for these taxes, although it had filed claims for other taxes.

Following its notices of liens, the IRS issued notices of intent to levy on several parcels of the Grothues' real property. To prevent the sale of the property from going forward, the Grothues filed the instant adversary action, claiming that any personal liability they had for the corporations' excise taxes had been discharged at the time their reorganization plan was confirmed four years earlier. They further requested a determination as to the underlying legality and amount of the taxes owed.

The IRS responded by moving to dismiss or for summary judgment, arguing that the taxes were non-dischargeable for two reasons. First, it argued that the excise taxes fell within the exception to discharge contained in 11 U.S.C. § 523(a)(1)(A), which provides that any debt for a tax "of the kind and for the periods specified in ...507(a)(8)" of the Code is not dischargeable. Alternatively, the IRS asserted that Marilyn Grothues's guilty plea in her criminal case established, as a matter of law, that her liability for the taxes was non-dischargeable under § 523(a)(1)(C), which excepts from discharge any tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat." *Id.* § 523(a)(1)(C). Finally, it argued that the bankruptcy court lacked jur-

---

1. As the IRS points out, the plea agreement itself provided for Mrs. Grothues's payment of only SWOJ's back taxes, omitting reference to SWEP. That omission was corrected at the plea hearing. (*See* IRS Mot. Dismiss, Tr. at 3.)

isdiction to consider the underlying legality of the taxes owed by SWOJ and SWEP.

On April 2, 1997, the bankruptcy court held a hearing on the IRS's motion. At the conclusion of the hearing, the court orally granted the motion, memorializing that ruling without elaboration in a short order entered a few days later. The bankruptcy court addressed two central issues in its bench ruling. First, it held that it had jurisdiction to consider whether the claims asserted by the IRS were discharged by the confirmation of the Grothues' reorganization plan even though the Grothues' bankruptcy case had been closed. (*See* Tr. at 79–80.) Second, as to the merits of that issue, the bankruptcy court found that, assuming that the IRS had a pre-confirmation claim for the excises taxes, that claim would not have been dischargeable under § 523(a)(1)(C) because Marilyn Grothues had pled guilty to related charges of willful tax evasion. The bankruptcy court did not specifically address dischargeability as to Paul Grothues, who was never charged with tax evasion, or the IRS's alternative argument that the taxes were non-dischargeable under § 523(a)(1)(A). The Grothues now appeal this ruling.

## II. *Analysis.*

 Because the facts of this case are undisputed and the appeal presents only issues of law, the Court exercises de novo review. *See Hardee v. Internal Revenue Service (In re Hardee)*, 137 F.3d 337, 339 (5th Cir.1998). The Court begins with an analysis of the IRS's claims in this case. The IRS seeks payment of the taxes owed by two non-debtor corporations, SWOJ and SWEP, from Paul and Marilyn Grothues, who it alleges are alter egos or nominees of these companies. All of the

taxes are for time periods preceding plan confirmation and the oldest are for tax periods predating the Grothues's bankruptcy petition. Thus, the IRS's claims, as the bankruptcy court noted, (*see* Tr. at 79), are pre-confirmation and potentially subject to discharge under 11 U.S.C. § 1141. But, as explained below, the Court differs from the bankruptcy court and IRS's implicit characterization of these claims as claims for the payment of taxes.

Sections 523(a)(1)(A) and 523(a)(1)(C) provide that an individual debtor may not discharge certain types of taxes or customs duties. Under 523(a)(1)(A), taxes of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) are nondischargeable, even if the IRS never filed a claim for those taxes. *See* 11 U.S.C. § 523(a)(1)(A). Since § 508(a)(8) includes excise taxes, the IRS argues below and to this Court that its claims against the Grothues for SWOJ and SWEP's excise taxes are, by definition, nondischargeable. Alternatively, the IRS maintains that these taxes are non-dischargeable under § 523(a)(1)(C), which exempts from discharge a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat." *Id.* § 523(a)(1)(C). But both of these provisions require that the IRS's claim be for a tax, a prerequisite that has not been met in this case.

It is undisputed that the excise taxes at issue here were those of the two corporations, SWEP and SWOJ, and were not owed by the Grothues personally. It is equally clear that the Grothues were not liable for these taxes under a trust fund or responsible party theory, because no such liability was available at the time the taxes were incurred.[2] Consequently, the only

---

**2.** Among the taxes included within § 507(a)(8) are taxes "required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. § 508(a)(8)(c). These taxes include taxes assessed against a non-debtor taxpayer, but for which the IRS asserts the debtor is liable as a responsible party under 26 U.S.C. § 6672.

*See United States v. Sotelo*, 436 U.S. 268, 274–75, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978)(treating tax penalty under § 6672 as a tax within predecessor provision of Bankruptcy Act). But the IRS has not interpreted § 6672 as including within its scope the type of motor fuel excise taxes at issue here, because they are not "collected" from the per-

way in which the IRS could obtain creditor status as to the taxes owed by SWOJ and SWEP was by asserting an alter ego, nominee or related veil-piercing theory, not direct liability for the taxes themselves. In the Court's view, this distinction places the IRS's claim outside of the context of § 507(a)(8) and § 523(a)(1).

Unlike a direct claim for taxes, the IRS's alter ego claim represents an equitable remedy, regardless of whether a money judgment may ultimately result from it. *See Luper v. Banner Indus, Inc. (In re Lee Way Holding Co.),* 118 B.R. 544, 548 (Bankr.S.D.Ohio 1990)("When considering the remedy, the fact that a money judgment may result from an equitable remedy does not change the equitable nature of the remedy itself."). *See generally McCarthy v. Azure,* 22 F.3d 351, 362 (1st Cir.1994); *Mid–West Prods., Inc. v. Simpson (In re Mid–West Prods., Inc.),* 13 B.R. 562, 566–67 (Bankr.D.Kan.1981). The same holds true for a claim for a debt premised on nominee status. *See In re Richards,* 231 B.R. 571, 578 (E.D.Pa.1999). What, in essence, the IRS would receive by asserting such an alter ego or nominee claim is a declaratory judgment that the Grothues' assets are available to satisfy the tax debts of SWOJ and SWEP. *See In re Lee Way Holding Co.,* 118 B.R. at 548; *In re Richards,* 231 B.R. at 578 ("[N]ominee theory is utilized to determine whether property should be construed as belonging to the taxpayer if he/she treated and viewed the property as his/her own, in spite of the legal machinations employed to distinguish legal title to the property."). While this type of claim against a debtor's property nevertheless "constitutes a 'claim' against the debtor for the purposes of federal bankruptcy law," *Sonitrol Fin.*

*Corp. v. Oklahoma City Abstract & Title Co. (In re Yeary),* 55 F.3d 504, 509 (10th Cir.1995), it not one for the underlying taxes. Furthermore, the IRS should be aware of this distinction, as it has filed alter ego claims in bankruptcy cases in the past. *See, e.g., In re Homelands of De-Leon Springs, Inc.,* 190 B.R. 666 (Bankr. M.D.Fla.1995). Consequently, because the IRS's claim is not for a tax, the exceptions to discharge contained in §§ 523(a)(1)(A) and 523(a)(1)(C) by definition do not apply.

This view is consistent the with court's ruling in a similar case, *In re Hurricane R.V. Park,* 185 B.R. 610 (Bankr.D.Utah 1995). In that case, the IRS filed tax liens addressed to the corporate debtor as "nominee, alter ego, transferee or agent" of the corporate debtor's vice president. *Id.* at 612–13. The liens were filed against property listed in the corporation's schedules and included as a material part of its reorganization. The filing occurred more than a year after the corporation's reorganization plan had been confirmed. Shortly after the liens were filed, the corporation moved to enforce the bankruptcy discharge and for a contempt citation against IRS.

As a preliminary matter, the court first determined that it had jurisdiction to consider the motion because the IRS's attempt to levy on the corporation's property was an action to recover on a debt of the corporation within the scope of § 524 post-confirmation injunction. *Id.* at 613. It then noted that no party disputed that the corporation was "not directly liable to the IRS for the taxes sought to be collected by the liens and that the tax liens were filed by the IRS in an effort to collect taxes owed by [the corporation's vice presi-

---

son paying for the product, but rather are imposed on the producer, manufacturer, importer or wholesaler. *See, e.g.,* Internal Revenue Manual, pt. 5, Ch. 5600, § 563(17).1(2)(1993). To close this loophole, in 1990 Congress enacted a statute which now provides for responsible person liability with respect to these excise taxes, *see* 26 U.S.C. § 4103, but it does not apply retroac-

tively to the taxes at issue in this case, *see United States v. Various de Facto Joint Ventures,* 963 F.Supp. 197, 199 (E.D.N.Y.1996). Accordingly, at the time these taxes were assessed against the Grothues, the couple could not be held personally liable as responsible parties under any provision of the Internal Revenue Code.

dent]." *Id.* at 613. Rather, IRS asserted four theories under which it argued that the corporation was liable for the taxes: as a nominee, alter ego, transferee or agent of the taxpayer. Under any of these, the bankruptcy court reasoned that the IRS would be considered a creditor of the corporation holding a claim contingent upon the outcome of litigation. *Id.* In addition, the court noted that the IRS would also be a creditor to the extent that it had the right to levy upon the assets of the corporation under federal tax law, stating that "the statutory right to levy upon assets is a claim within the meaning of 11 U.S.C. § 101(5) even if a debtor is not personally liable on the obligation." *Id.* at 614.

The court went on, however, to reject the IRS's contention that these claims had not been discharged in bankruptcy because they were not "formulated" before plan confirmation, noting that, regardless of the dates of the liens themselves, the taxes at issue originated before the company filed its bankruptcy petition. *Id.* In addition, the court noted that the IRS had failed to introduce any evidence that established any of its four theories under which it claimed the corporation was liable. *Id.* at 615. Consequently, the court ruled that the taxes had been discharged and the IRS's post-confirmation levies violated the § 524 injunction. The IRS was thus ordered to release the liens against the cor-

poration's property, the presence of which the court found hampered the company's ability to successfully reorganize. *Id.* at 615.

■ In this Court's view, the same reasoning applied *In re Hurricane R.V. Park* controls here. There is no dispute, like in *In re Hurricane R.V. Park*, that the delinquent taxes were not those of the Grothues, but of the third party corporations, SWOJ and SWEP. And as it did in *In re Hurricane R.V. Park*, the IRS argues here that these delinquent taxes are recoverable from the Grothues' assets under an alter ego or nominee theory. However, because the IRS's claim is not for the excise taxes themselves, but for an equitable right to recover from the Grothues's property, that claim is dischargeable under § 1141.[3] Consequently, the Court concludes that the IRS's pre-petition, equitable alter ego/nominee claim against the Grothues was discharged when their plan was confirmed, and its action in now asserting this claim against the Grothues's property violates the post-discharge injunction. *See NLRB v. Goodman (In re Goodman)*, 873 F.2d 598, 602 (2d Cir.1989)(holding, in part, that debtor discharged from alter-ego claim relating to pre-petition conduct); *In re Hurricane R.V. Park*, 185 B.R. at 615.

3. In this regard, the Court does not view as significant the fact that the IRS's alter ego claim relates to taxes for both pre- and post-petition periods. The IRS's claim arose when the Grothues allegedly improper conduct occurred, notwithstanding that some of the taxes may not have fallen due until later. *See Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc.)*, 4 F.3d 1329, 1335 n. 7 (5th Cir.1993)(claim is not rendered a post-petition claim merely by the fact that time for payment is triggered by event that happens after petition's filing); *Hassanally v. Republic Bank (In re Hassanally)*, 208 B.R. 46, 51 (9th Cir. BAP 1997)(if debtor's conduct forming basis for liability occurs pre-petition, claim in bankruptcy arises when that conduct occurs even though not manifest at case commencement). By definition, that conduct occurred at least as early as 1986, the earliest date

indicated on the IRS's notices of lien when it claims that the taxes may rightfully be recovered from the Grothues under an alter ego theory.

Moreover, the IRS clearly was or should have been aware of its claim before the Grothues's plan was confirmed. Court records indicate that Mrs. Grothues was indicted in the criminal case in July, 1992, a few weeks before plan confirmation. The Court agrees with the bankruptcy court's assessment that the IRS likely had knowledge of Mrs. Grothues's allegedly wrongful activities well before the indictment was filed. (*See* Tr. at 78–79.) Indeed, the Grothues assert that the IRS in fact filed a direct claim against them as to certain excise taxes, but later withdrew it. This information, however, is not in the record before the Court.

The Court agrees, however, with the bankruptcy court's decision to decline to consider the underlying tax liability of SWOJ and SWEP. The tax liability of these non-debtor entities is irrelevant to any issue over which the bankruptcy court had jurisdiction. Accordingly,

IT IS ORDERED THAT the judgment of the bankruptcy court is REVERSED, in part, and summary judgment is granted in favor of Debtors Paul A. and Marilyn Grothues as to the dischargeability of their debt, if any, to the IRS as alter egos and/or nominees of SWOJ and SWEP, and is AFFIRMED, in part, as to bankruptcy court's determination that it lacked jurisdiction to determine the underlying tax liability of SWOJ and SWEP.